# UNITED STATES DISTRICT COURT
## FOR THE
## WESTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

KATHRYN HEMENWAY                    HON: **RICHARD ALAN ENSLEN**

                Plaintiff,    FILE: **4:05-CV-7**

v

                                           **BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

ALBION PUBLIC SCHOOLS

                                           **ORAL ARGUMENT REQUESTED**

_____

_____Defendant._____

_____/

| | |
|---|---|
| William F. Piper (P38636) | Philip A. Erickson (P37081) |
| Piper, Willoughby & Wise, PLC | Plunkett & Cooney, PC |
| Attorneys for Plaintiff | Attorney for Defendant |
| 2700 Old Centre Avenue | 325 E. Grand River Ave. #250 |
| Portage, MI 49024 | East Lansing, MI 48823 |
| (269) 323-3400 | (517) 324-5608 |
| (269) 323-3418 facsimile | (517) 333-6694 |
| wpiper@fkdb.com | perickson@plunkettcooney.com |

**TABLE OF CONTENTS**                                    **PAGE NUMBER**

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii, iv

I.     INTRODUCTION AND STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STANDARDS ON MOTIONS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . 8

III.   LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.    RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**INDEX OF AUTHORITIES**                                   **PAGE NUMBER**
**CASES**

*Anderson v Liberty Lobby, Inc.*, 477 US 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Auer v Robbins*, 519 US 492, 497; 137 L Ed 2d 29, 112 SCT 705 (1999) . . . . . . . . . . . . . . . . 18

*Bluitt v Evallo of America*, 3 F Supp 2d 761 (SD Tex 1998) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Byrne v Avon Products, Inc.*, 328 F 3d 379 (7th Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cavin v Honda of Am Mfg, Inc.,* 346 F 3d 713 (6th Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Celotex Corp. v Catrett*, 477 US 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Chandler v Specialty Tires of American, Inc.* 283 F 3d 818 (6th Cir 2002) . . . . . . . . . . . . . . . . 12

*Conrad v Eaton Corp.*, 303 F Supp 2d 987 (W.D. Iowa 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) . . . . . . . . . . . . . . . . . 14

*Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . 14

*Hendry v GTE N. Inc.*, 896 F Supp 816 (ND Ind 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Heschman v Time Warner Entm't Co. LP*, 151 F 3d 591 (7th Cir 1998) . . . . . . . . . . . . . . . . . . . 17

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 722-27 (2d Cir. 2001) . . . . 14

*King v Preferred Tech Group*, 166 F 3d 887 (7th Cir 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Marrero v Camden County Board of Social Services*, 164 F Supp 2d 455, 463
(D NJ 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14, 17

*Matsushita Electrical Industrial Co. v Zenith Radio Corp.*, 475 US 574 (1986) . . . . . . . . . . . . 8

*McClain v Southwest Steel Co.*, 940 F Supp 295 (W.D. Okla 1996) . . . . . . . . . . . . . . . . . . . . . . 17

*Plant v Morton International*, Inc., 212 F 3d 929 (CA 6 2000) . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*Price v City of Fort Wayne*, 117 F 3d 1022 (7th Cir 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Scamihorn v General Truck Drivers*, 282 F 3d 1078 (9th Cir 2002) . . . . . . . . . . . . . . . . . . . . . . 12

*Sims v Alameda- Contra Transit Dist.*, 2 F Supp 2d 1253, 1266 (ND Cal 1998) . . . . . . . . . . . 17

*Sorrell v Rinker Materials Corp.*, 395 F 3d 332 (6th Cir 2005) . . . . . . . . . . . . . . . . . . . 14, 15, 20

*Stoops v. One Call Communications, Inc.*, 141 F 3d 309 (7th Cir 1998) . . . . . . . . . . . . . . . . . . 16

*Stubl v TA Systems, Inc*., 984 F Supp 1075 (Ed Mich 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v Shenango, Inc.,* 986 F Supp 309 (W.D. Pa 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wilson v Lemmington Home for the Aged*, 159 F Supp 2d 186, 188 (W.D. Pa 2001) . . . . . . . . 16

## STATUTES  AND REGULATIONS                    PAGE NUMBER

29 CFR 825.114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 CFR 825.220 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 CFR 285.308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 CFR 825.300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 CFR 825.301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

29 CFR 825.301 (b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

29 CFR 825.301 (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 CFR 825.305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 CFR 825.305 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

29 CFR 825.305 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 CFR 825.305 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

29 CFR 825.305 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

29 CFR 825.306 (b) (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 CFR 825.307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

29 CFR 825.307 (a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 CFR 825.307 (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

29 CFR 825.308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 USC § 2601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

29 USC § 2602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 USC § 2604 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

29 USC § 2613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 USC § 2613 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

29 USC § 2613 ( c ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 USC § 2615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# I.    INTRODUCTION AND STATEMENT OF FACTS

The plaintiff Kathryn Hemenway has sued her former employer the Albion Public Schools as a result of its discharge of her employment on May 26, 2004.  Specifically, Ms. Hemenway maintains that the defendant, by terminating her employment, both interfered with, restrained and denied her exercise and attempted exercise of her rights under the Family and Medical Leave Act, 29 USC § 2601 et. seq., and retaliated and discriminated against her because of her exercise or attempted exercise of her rights under the Act.  In this Motion Ms. Hemenway requests that this Court grant her Summary Judgment on her "interference" claim against the defendant.

In 1999 Kathryn Hemenway began working for the defendant as a substitute teacher.  In October 2002 she began working for the defendant as a program aide for emotionally impaired students.  Throughout her employment Mrs. Hemenway did a good job, according both to her principal Mrs. Eddie Williams and her classroom teacher and immediate supervisor Ramona Roberts **(Eddie Williams dep., at pp 14-15; Exhibit 1; Ley dep., at pp 36-38; Hemenway dep., at pp 34-38, 44, 53-55)**.

On April 21, 2004, another teacher's aide named Dan Clark made a comment to Mrs. Hemenway containing a sexual innuendo relating to Mrs. Hemenway's relationship with her husband that made her extremely uncomfortable.  This rekindled emotional trauma that Mrs. Hemenway had had related to an interpersonal conflict with Mr. Clark that had occurred earlier.  It also rekindled symptoms of colitis.  Mrs. Hemenway asked her principal, Mrs. Eddie Williams, to intervene so that she would not have to work with Mr. Clark.  Upon being confronted by the April 21, 2004 incident on or about May 4, 2004 in a meeting among Mrs. Hemenway, Mr. Clark and  the defendant's assistant superintendent Corey Netzley, Mr. Clark resigned his employment **(Hemenway dep., at pp 71-88; Exhibits 2 and 3)**.

On May 12, 2004 Mrs. Hemenway saw Mrs. Williams, her classroom teacher Ramona

1

Roberts, and Corey Netzley, speaking together.  Mrs. Hemenway correctly surmised that they were discussing bringing Mr. Clark back into her classroom, and this greatly distressed her and aggravated her colitis symptoms.  She went to see Dr. Ami Shah and described to her, between sobs, what was happening as well as the physical symptoms of her distress, including the colon/ rectal symptoms. Dr. Shah diagnosed acute depression and situational anxiety, among other problems, and gave Mrs. Hemenway a medical note keeping her off work for three weeks **(Hemenway dep., at pp 88-95; Exhibits 4 and 5; Dr.  Shah dep., at pp 7-8, 18-29, 41-48)**.

On May 12, 2004, Mrs. Hemenway, still crying, went to her school building and told elementary secretary Jan Hrab that she was not feeling well.  She gave the medical note to Ms. Hrab who copied it and gave the copy and the original back to her.  At approximately 4:00 p.m. Mrs. Hemenway, still crying, went to see her building principal Mrs. Eddie Williams.  Mrs. Hemenway handed a copy of the medical note to her.  Mrs. Hemenway explained that she would have to leave work for medical reasons.  She requested FMLA forms from her so that she could request and be granted a leave under the FMLA.  Mrs. Williams informed Ms. Hemenway that the forms were available at the Central Office, and Mrs. Hemenway indicated she would go there and get them **(Hemenway dep., at pp 96-101)**.

In the afternoon of May 13, 2004 Mrs. Hemenway went to the Central Office and requested FMLA forms from Judy Patton.  Ms. Patton did not have the forms, but she told Mrs. Hemenway that she would pass on her request for the forms to the administration, which she did **(Hemenway dep., at pp 101-106, 131-132; Patton dep., at pp 3-4, 7-10)**.

For her part, Mrs. Williams testified in her deposition that on May 12, 2004 Mrs. Hemenway visited her office and appeared upset, as her voice was shaky, and she was tearful.  Ms. Hemenway gave Mrs. Williams a doctor's note and told her that she was leaving work.  Mrs. Williams referred Mrs. Hemenway to the Central Office to obtain FMLA forms.  Mrs. Williams was not able to discuss

2

with Mrs. Hemenway her plan to move her to a new classroom and bring Mr. Clark back into her old classroom with another teacher's aide. Pursuant to her practice, however, Mrs. Williams spoke to Mr. Netzley about Ms. Hemenway's leaving, and she believes that she informed Mr. Netzley about the medical note **(Eddie Williams dep., at pp 13-26, 34-35, 45-47, 61-63)**.

Mrs. Netzley, for her part, appeared to testify initially that she learned about Mrs. Hemenway's having left a medical note with Mrs. Williams within a week of May 12, 2004 **(Netzley dep., at pp 33-34)**. Then she testified that it was possible that she learned about Mrs. Hemenway's having given Mrs. Williams a medical note before she terminated Mrs. Hemenway on May 26, 2004, but it was also possible that she learned about it after she terminated Mrs. Hemenway **(Netzley dep., at pp 33-34)**. Still later she testified that she had not learned that Mrs. Hemenway had given Mrs. Williams a medical note until after she had terminated Mrs. Hemenway on May 26, 2004 **(Netzley dep., at p 59)**. The defendant's Reply to plaintiff's Response to Defendant's Motion for Order Compelling Independent Medical Examination, at p 2, refers only to Ms. Netzley's testimony at page 59 where she denied knowing about the medical note, but it does not acknowledge her earlier testimony contradicting that. Ms. Netzley did, however, without contradiction, testify that she learned about Mrs. Hemenway's request for FMLA forms before she prepared the May 26, 2004 letter terminating Mrs. Hemenway. More specifically, Ms. Netzley acknowledged that before May 26, 2004 she had learned from Central Office staff that Mrs. Hemenway had requested FMLA forms **(Netzley dep., at pp 30-31, 35-36, 49)**.

Unfortunately, in order to create a question of fact when there is not one, the defendant has attempted deliberately to mischaracterize the testimony, and, in a particularly aggressive and galling fashion, it accused the plaintiff of mischaracterizing the testimony. More specifically, in its Reply to Plaintiff's Response to Defendant's Motion for Order Compelling Independent Medical Examination (hereafter Reply), on page one, the defendant stated, "Defendant files this reply brief

to point out the mischaracterizations and inaccuracies in plaintiff's response." Then, on page two

of its Reply, the defendant stated as follows:

> Plaintiff further states in her brief that Ms. Netzley testified that she
> learned of Plaintiff's request for FMLA forms well before she
> prepared the May 26, 2004 letter.  Again, this is a total
> mischaracterization of the testimony.  In fact, Ms. Netzley testified
> that she spoke with Ms. Williams on May 12, 2004, regarding
> plaintiff leaving work.  Ms. Williams did not inform Ms. Netzley that
> plaintiff had requested FMLA forms (Deposition of Corey Netzley,
> Exhibit B, p 30).  <u>Ms. Netzley indicated that she later learned that</u>
> <u>plaintiff requested FMLA forms but she did not recall whether she</u>
> <u>learned of the request before or after she wrote the May 26 letter</u>
> (Deposition of Corey Netzley, Exhibit B, pp 31-32).

In reality, Ms. Netzley did not in any way testify on pages 31-32 of her deposition that she

did not recall whether she learned of the request before or after she wrote the May 26 letter.  That

is total mischaracterization by the defendant.  In fact, Ms. Netzley's testimony was that she <u>did</u> learn

of Mrs. Hemenway's request for FMLA forms before she wrote the May 26, 2004 letter to Mrs.

Hemenway.  This is evinced by the following colloquy at pp 35-36 of Ms. Netzley's deposition:

> (By Mr. Piper)
> Q      Did you attempt to speak to anyone about Mrs. Hemenway to
>        get a final clarification or other information before you
>        drafted the letter that indicated she was considered to have
>        resigned from the District?
>
> (Mr. Erickson: Objection, asked and answered.)
> (Mr. Piper; Go ahead)
> (Mr. Erickson; you can go ahead)
>
> The Witness: The only recollection I have is speaking with Eddie
> Williams and speaking with Sue Armistead, and that's it.
>
> (By Mr. Piper)
> Q      What did Ms. Armistead indicate?
> A      That Mrs. Hemenway had requested FMLA forms.

On page 6 of the defendant's Reply the defendant inaccurately and improperly stated, "the

May 26, 2004 letter was written before Ms. Netzley had notice of Plaintiff's FMLA request or Dr.

Shah's note as set forth above.  The letter would not have been authored had Ms. Netzley known of

Plaintiff's FMLA request." In reality, as noted above, the defendant and Ms. Netzley knew of Ms. Hemenway's FMLA request, but they wrote the May 26, 2004 letter anyway.

After several days Mrs. Hemenway did not receive FMLA paperwork, and this greatly concerned her. Mrs. Hemenway contacted Mrs. Williams by May 19, 2004 to inquire about the situation both directly and by e-mail, but she did not receive an answer to her request for the FMLA forms **(Hemenway dep., at pp 101-106)**. The defendant still did not provide Mrs. Hemenway with FMLA forms, much less request from her that she provide more specific medical information to it.

According to Ms. Netzley, <u>before</u> drafting the May 26, 2004 letter to Mrs. Hemenway in which she indicated that because she had not shown up for work for three days she was considered to have resigned, Ms. Netzley spoke to the district's attorney John Gierek. She testified that she could not recall what information she provided to him. She also testified that she could not recall what advice he provided to her **(Netzley dep., at pp 36-38)**. Mr. Gierek, for his part, testified that he had a conversation with Ms. Netzley <u>after</u> she had taken the action against Mrs. Hemenway (the May 26, 2004 letter). He testified that Ms. Netzley provided him no information whatsoever that indicated that the FMLA was an issue. He indicated generally that Ms. Netzley told him that Mrs. Hemenway quit in a huff because she was dissatisfied with the resolution of a sexual harassment issue and did not want to work with another aide. He further indicated that Ms. Netzley told him that Mrs. Hemenway was a problem employee who was emotionally unstable. Mr. Gierek advised her that if Ms. Hemenway walked away from her job and abandoned it, she did not have to take her back to work **(Gierek dep., at pp 35-45)**.

On May 27, 2004 Mrs. Hemenway received a letter from the defendant dated May 26, 2004 signed by Mrs. Netzley indicating that because she had not shown up for work for three consecutive days it considered her to have resigned without notice and that she was not eligible for rehire. Mrs. Hemenway was extremely alarmed and concerned about the letter, particularly because at that time

she had no real knowledge of the FMLA,  and she therefore assumed that she had been validly terminated **(Hemenway dep., at pp 106-108; Exhibit 6; Netzley dep., at pp 31-33, 38-41)**.

Later on May 27, 2004 Mrs. Hemenway telephoned Mrs. Netzley.  She asked her if she had learned that she had submitted a doctor's note to Mrs. Williams on May 12, 2004 and that she was ill.  Mrs. Netzley said no.  Mrs. Hemenway asked her if she had learned about her request for FMLA forms.  Mrs. Netzley acknowledged having received the FMLA forms request, but then she told Mrs. Hemenway that as far as she was concerned she was out of the District.  She also told Mrs. Hemenway that the FMLA was only for big or important illnesses.  <u>She told Mrs. Hemenway that she would not give her FMLA forms</u>.  Mrs. Netzley told Mrs. Hemenway that she might be willing to remove the not eligible for rehire language from the letter (but she never did) **(Hemenway dep., at pp 106-109, 117-118)**.  <u>There is no question of fact regarding these facts.  That is because Ms. Netzley, for her part, testified that she couldn't recall anything about the substance of the telephone conversation between her and Mrs. Hemenway on the 27th.  She acknowledged, however, that the conversation must have occurred, because her e-mail to Mrs. Williams on May 28, 2004 at 7:58 a.m. referenced it</u> **(Netzley dep., at pp 51-60; Exhibit 7)**.

On May 27, 2004, in response to the May 26, 2004 termination letter, Mrs. Hemenway prepared a letter in which she indicated that she was resigning.  <u>She explained in the letter that she had not intended to resign, but was now doing so in response to the hurtful May 26, 2004 letter.  Mrs. Hemenway testified in her deposition that she did so because she felt she had no choice, as Mrs. Netzley had refused to give her leave under the FMLA or FMLA forms</u>.  She sent the letter to the defendant on May 28, 2004, and the defendant received it on June 1, 2004.  She sent the letter after unsuccessfully trying both to improve her employment status and her future employment opportunities after appeals by e-mail to Mrs. Williams.  In one of these e-mails sent at 5:14 p.m. Mrs. Hemenway  stated, "I do not know anything about the FMLA." **(Hemenway dep., at pp 106-119;**

**Exhibit 7 collectively; Exhibit 8, which is the May 27, 2004 resignation letter)**.

In late July 2004 Mrs. Hemenway consulted with attorney John Sims, who practices in Albion.  She learned from him that her former employer may have violated her rights under the FMLA.  Following Mr. Sims' advice, on August 6, 2004 Mrs. Hemenway met with the defendant's Interim Superintendent Larry Ley and implored him to recognize the district's errors and return her to work.  Mr. Ley told her to put what she was saying in writing.  She did so, returning the letter to him with an attached chronology on the same day- August 6, 2004.  In the letter she described generally what had happened to date with respect to her employment, including her delivery of the medical note to Ms. Williams and her futile attempts to obtain FMLA forms from the district.  Also in it, following Mr. Sims' advice, she requested the following from Mr. Ley and the district: 1) that he strike the letter in her file indicating that she resigned without notice and was unemployable by the District; 2) that he remove the resignation letter, noting that it was made under duress; 3) that he declare that she had been on a leave under the FMLA since May 12, 2004; and 4) that she be able to return to work.  Mrs. Hemenway noted that her leave could have been extended to August 10, 2004, and she requested a response by Mr. Ley by then **(Exhibit 9; Hemenway dep., at pp 122-128; Ley dep., at pp 8-10, 22-30)**.

Mr. Ley testified that he did not consult with the district's attorney Mr. Gierek in any way about Mrs. Hemenway **(Ley dep., at pp 27-29)**.  Mr. Gierek, however, testified that he had an extensive luncheon meeting with Mr. Ley in August 2004 in which they discussed Mrs. Hemenway. During the meeting Mr. Ley showed Mr. Gierek both the letter written by Mrs. Hemenway requesting her job back and the chronology written by Mrs. Hemenway.  Mr. Gierek was surprised by the letter and the chronology, because it was his belief and understanding, which he had from information provided by Ms. Netzley, that Mrs. Hemenway had not raised the FMLA and that the FMLA was not an issue at all.  It appeared to him that Mrs. Hemenway was raising the FMLA after

7

the fact (of course, the information regarding the FMLA set forth by Mrs. Hemenway in the letter and the chronology was true).  <u>He advised Mr. Ley that he didn't have to investigate the truth of what Mrs. Hemenway had stated in the letter or the chronology regarding the FMLA.  He further indicated that it didn't matter even if the district violated the FMLA, or that the violations may have induced Mrs. Hemenway to resign- the district could rely on the resignation, did not have to offer her back her job, and owed no further obligation to Mrs. Hemenway</u> **(Gierek dep., at pp 45-72)**.

Mr. Ley did not respond at all to Mrs. Hemenway's letter to him.  He also did not respond to her further inquires regarding the matter **(Ley dep., at pp 22-30)**.

Having exhausted her non legal options, Mrs. Hemenway brought this lawsuit.

## II.    STANDARDS ON MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed R Civ P 56 ( c).

Three 1986 Supreme Court cases - *Matsushita Electrical Industrial Co. v Zenith Radio Corp.*, 475 US 574 (1986); *Anderson v Liberty Lobby, Inc.*, 477 US 242 (1986); and *Celotex Corp. v Catrett*, 477 US 317 (1986)- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.  According to the *Celotex* Court,

> In our view, the plain language of Rule 56 ( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 US at 322

After reviewing the above trilogy, the Sixth Circuit established series of principles to be applied to motions for summary judgment. They are summarized as follows:

> *The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

> *The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> *The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> *The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v Aultman Hospital Association*, 78 F 3d 1079, 1087 (6th Cir 1996). See also, *Street v J.C. Bradford & Co.*, 886 F 2d 1472, 1479-80 (6th Cir 1989). As the plaintiff will explain, the plaintiff should be granted summary judgment.

## III.     LAW AND ARGUMENT

The plaintiff Kathryn Hemenway has brought her wrongful termination case under the Family and Medical Leave Act, 29 USC § 2601 et. seq. The Family and Medical Leave Act and its regulations are technical. In order to outline the issues in question in this case, the plaintiff needs first to outline the basic provisions of the relevant law. The plaintiff will then discuss those

provisions directly applicable to issues in question in this motion.

Generally, under the Family and Medical Leave Act, a covered employer (which the defendant is) must permit an eligible employee (which Mrs. Hemenway was) up to 12 weeks of unpaid leave for certain purposes, including: 1.) leave because of the birth of a child and in order to care for that child; 2.) leave for an employee's serious health condition; and 3.) leave in order to care for the spouse or child of the employee, if the spouse or child has a serious health condition. See 29 USC § 2602. The Act also requires restoration of the employee to her original position upon return to work, at the conclusion of the leave. 29 USC § 2604 (a).

Generally, a serious health condition under the FMLA and the regulations, which are lengthy, interpreting it, is an illness, injury, impairment, or physical or mental condition that involves as follows:

      ✶      Any period of incapacity or treatment in connection with or consequent to inpatient care in a hospital, hospice or residential medical care facility; or

      ✶      any period of incapacity which requires absence from work, school, or other regular daily activities for more than three calendar days, and a) treatment by a health care provider an at least one occasion which results in a regimen of continuing treatment by a health care provider, or b) treatment two or more times by a health care provider, or

      ✶      any period of incapacity involving continuing treatment by or under the supervision of a health care provider for pregnancy or prenatal care or for a chronic or long term health condition that is so serious that if not treated would likely result in a period of incapacity for more than three calendar days.

See 29 CFR 825.114.

Incapacity is defined to mean inability to attend work, attend school or perform other regular

10

daily activities due to a serious health condition or treatment or recovery therefrom. See 29 CFR 825.306 (b)(2).

Mrs. Hemenway, maintains, of course, that she was incapacitated by acute depression and situational anxiety that aggravated a previously existing colon/rectal problem and that that prevented her from working and performing her normal daily activities for three weeks after May 12, 2004. Dr. Ami Shah supports this claim, as her medical note; records; treatment, which involved prescription medication and a follow up appointment; and her deposition testimony confirms. **(Exhibit 4; Exhibit 5; Dr. Shah dep, at pp 7-8, 18-29, 41-48)**. This clearly constitutes a serious health condition as defined in the Act, under several of the definitions.

There are generally two types of claims that an employee can make under the FMLA. First, an employee can claim that she suffered an adverse impact, including the loss of her job, because the employer interfered with, by violating the sections and regulations of the FMLA protecting an employee, her rights under the FMLA. See 29 USC § 2615. More specifically, when an employee alleges a deprivation of the FMLA's substantive guarantees, the employee must demonstrate by a preponderance of the evidence only her entitlement to the disputed right under the FMLA (which would usually be determined as a matter of law). <u>The intent or lack of intent of the employer in violating the substantive guarantee is immaterial.</u> See *King v Preferred Tech Group*, 166 F 3d 887 (7th Cir 1999); *Marrero v Camden County Board of Social Services*, 164 F Supp 2d 455, 463 (D NJ 2001). Therefore, to succeed on a claim that an employer violated an employee's substantive rights under the FMLA, the employee must prove: 1) that she was an eligible employee of an employer as defined in the Act; 2) that she was qualified for leave under the FMLA; e. g., she had a serious health condition; 3) that she furnished the appropriate notice under the circumstances; and 4) that the employer failed to provide 12 weeks of FMLA leave or other protection such as restoration. *Cavin v Honda of Am Mfg, Inc.,* 346 F 3d 713 (6th Cir 2003); *Scamihorn v General Truck Drivers*, 282 F

3d 1078 (9th Cir 2002).

When an employee claims that an employer discriminated or retaliated against an employee by taking adverse action against an employee for having exercised a right under the FMLA, the issue of the employer's intent is relevant. The issue is whether there was a causal connection between the employee's protected FMLA activity (the leave, or request therefore) and the adverse employment action. *Marrero v Camden County Board of Social Services*, 164 F Supp 2d 455, 463 (D NJ 2001); *King v Preferred Tech Group*, 166 F 3d 887 (7th Cir 1999); *Stubl v TA Systems, Inc.*, 984 F Supp 1075 (Ed Mich 1997); *Chandler v Specialty Tires of American, Inc.* 283 F 3d 818 (6th Cir 2002).

In this case the defendant Albion Public Schools interfered with, restrained and denied Mrs. Hemenway's rights under the FMLA in ways that are almost too numerous to count. Plaintiff will point out some notable violations.

The defendant, again in its irresponsible Reply referenced above, at p 3, has denied that it violated the notice requirements of the Act and its regulations. On page 4 of its Reply, the defendant specifically stated, "...plaintiff received notice of her FMLA rights and was aware of her rights. FMLA notices were posted in the main hallway on the first floor of Washington Gardner and in the copy room which plaintiff used on nearly a daily basis." This argument is completely legally groundless and factually unsupportable. In fact, the defendant violated the notice requirements of the Act and its regulations in at least a couple of ways.

The defendant referred to the posting argument of the FMLA, which is set forth in 29 CFR 825.300. If this minimal and general posting requirement constituted sufficient notice to an employee of her rights and duties under the Act, there would be no reason for the extensive notice requirements contained in 29 CFR 825.301, which are required independent of the posting requirement. The defendant, amazingly enough, violated all of the notice provisions of 29 CFR 825.301.

The defendant, first, and quite incredibly, did not have a written policy regarding the FMLA. It did not have an employee handbook. The contract between the Albion Public Schools and the paraprofessionals did not have any provisions in it regarding the FMLA **(Ley dep., at pp 13-17; Exhibit 10)**, although it has statements in it regarding other benefits. This violates 29 CFR 825.301, which states in pertinent part as follows:

> If an FMLA- covered employer has any eligible employees and has any written guidance to employees concerning employee benefits or leave rights, such as in an employee handbook, information concerning FMLA entitlements and employee obligations under the FMLA must be included in the handbook or other document.

The defendant also violated 29 CFR 825.301 (b)(1), which relates to an employer's response to a request for leave, which states as follows:

> The employer shall also provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations.

The defendant, of course, sent no such written notice to Mrs. Hemenway.

Contrary to the defendant's statement in its Reply, there are no facts that indicate that Mrs. Hemenway was aware of her expectations and obligations under the FMLA, and specifically, whether she knew whether she would qualify for leave under the FMLA. She did not receive the required notices set forth above. And she indicated, in an e-mail shortly after her termination, "I do not know anything about the FMLA." See *Statement of Facts, supra*.

As this Court is aware, the defendant is requesting that it be allowed to conduct an independent medical examination of Ms. Hemenway under Fed R Civ P 35 some 18 or more months after the fact intending obviously to challenge Ms. Hemenway's and Dr. Shah's contention that Ms. Hemenway suffered a serious health condition as defined in the Act. The plaintiff has challenged

the defendant's right to do this for substantive reasons related to the process for obtaining subsequent

medical opinions described in the Act in an Appeal from the Magistrate Judge's Opinion to this

Court. The Court should rule in the plaintiff's favor regarding this. However, this Court need not

even reach this issue, because the defendant did not supply the plaintiff with notice of the protections

of the Act and its regulations described above, and it therefore should be equitably estopped from

challenging Mrs. Hemenway's entitlement to a leave under the Act.

     This equitable estoppel principle in an FMLA case has been noted favorably in *Sorrell v*

*Rinker Materials Corp.*, 395 F 3d 332 (6th Cir 2005) as follows:

> First, the district should consider whether the doctrine of equitable
> estoppel applied to bar Rinker from challenging Sorrell's entitlement
> to leave under the Act. Although we are unaware of any cases issued
> by this Court that are dispositive of this issue, several of our sister
> courts have held that, under the right circumstances, an employer may
> be equitably estopped from challenging an employee's entitlement to
> such leave. See, e.g., *Duty v Norton-Alcoa Proppants*, 293 F 3d 481,
> 493-94 (8th Cir 2002)(holding that an employer was equitably
> estopped from asserting an affirmative defense that an employee's
> leave was confined to the twelve weeks provided by the Act where
> the employer explicitly guaranteed longer leave); *Kosakow v New*
> *Rochelle Radiology Assoc.*, P.C., 274 F 3d 706, 722-27 (2d Cir
> 2001)(holding that the district court could conclude on remand that
> an employer is equitably estopped from challenging an employee's
> eligibility for leave where the employer allegedly failed to "inform its
> employees of the protections of the [Act] and what was required of its
> employees in order that they qualify for those protections");
> *Dormeyer v Comerica Bank-Illinois*, 223 F 3d 579, 582 (7th Cir
> 2000)(holding that "an employer who by his silence misled an
> employee concerning the employee's entitlement to family leave
> might, if the employee reasonably relied and was harmed as a result,
> be estopped to please the defense of ineligibility to the employee's
> claim of entitlement to family leave"). Whether the doctrine of
> equitable estoppel applies in this case to preclude Rinker from
> challenging Sorrell's entitlement to leave is a matter for the district
> court to consider in the first instance on remand.

     This Court should apply this equitable estoppel principle, particularly because Ms.

Hemenway has been severely prejudiced by the lack of notice. As noted throughout this brief, had

Mrs. Hemenway known about her rights under the FMLA, she never would have resigned, as she

wanted to retain her job when she went on a medical leave, not leave it. Furthermore, had Mrs. Hemenway been notified of her rights and duties under the Act, she could have asked her medical care provider, Dr. Shah, at a time in which Dr. Shah's recollection was current, to provide a detailed medical certification that convincingly explained why Mrs. Hemenway's acute depression and situational anxiety constituted a serious health condition under the Act. As it is, Dr. Shah testified not based on a specific recollection but in accordance with her medical records.

The defendant may claim that Mrs. Hemenway did not provide it adequate notice of her need for a leave under the FMLA. This argument, if made, is groundless.

Parenthetically, Mrs. Hemenway provided ample notice to the defendant that she wanted leave under the Act, even if one believes the portion of Mrs. Netzley's testimony that contradicts other portions of her testimony that she was not informed about the medical note that Mrs. Hemenway had presented to Mrs. Williams until after she wrote the termination letter. Mrs. Hemenway told Mrs. Williams how she was feeling, provided her with a medical note from Dr. Shah excusing her for three weeks, and requested a leave under the FMLA to her. Mrs. Hemenway is not responsible for the defendant's alleged internal communication problem, particularly when the defendant never presented its employees with a procedure in a handbook, contract or other writing for giving notice of a need for leave under the FMLA. The Act is violated if the employer interfered with an employee's right under the Act, not whether its Human Resources officer intended to do so. And even if intent were required, the facts indicate that Mrs. Netzley knew that Mrs. Hemenway had requested FMLA forms from the Central Office before she wrote the May 26, 2004 termination letter. There is no reasonable explanation, under the circumstances, for Mrs. Netzley to believe that Mrs. Hemenway was "out of the District" or had abandoned her job when she knew that Mrs. Hemenway was requesting a leave under the FMLA. After all, requesting and obtaining a leave under the FMLA is specifically designed and intended to allow an employee to retain her

employment while on leave.  Mrs. Netzley's conclusion that Mrs. Hemenway was out of the District or had abandoned her job is incredibly disingenuous and untenable.

At any rate, the above should constitute adequate notice under the circumstances.  See e.g. *Price v City of Fort Wayne*, 117 F 3d 1022 (7th Cir 1997); *Wilson v Lemmington Home for the Aged*, 159 F Supp 2d 186, 188 (W.D. Pa  2001); *Stoops v. One Call Communications, Inc.*, 141 F 3d 309 (7th Cir 1998); *Conrad v Eaton Corp.*, 303 F Supp 2d 987 (W.D. Iowa 2004).

Even if one considers for the sake of argument that the notice was not sufficient, plaintiff notes that the defendant did not inquire further about the reason for the leave, either by asking for more specific information or by asking for certification.  Like the regulation requiring employees to give an employee an opportunity to cure an inadequate certification (29 CFR 825.305 (d)), a regulation requires the employer to give the employee an opportunity to cure an alleged inadequate notice of a medical condition necessitating a leave under the FMLA.  More specifically, 29 CFR 825.303 (b) states in pertinent part as follows:

> The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means.....The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.  <u>The employer will be expected to obtain any additional required information through informal means</u> **(emphasis added)**.  The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

Courts have used the aforementioned provision as well as analogous one regarding paid leave located at 29 CFR 825.208 (a) against employers who do not in fact inquire further in response to an employee notice that contained minimal information about a reason for a leave.  *Byrne v Avon Products, Inc.*, 328 F 3d 379 (7th Cir 2003).  *Heschman v Time Warner Entm't Co. LP*, 151 F 3d 591 (7th Cir 1998); *McClain v Southwest Steel Co.*, 940 F Supp 295 (W.D. Okla 1996); *Hendry v GTE N. Inc.*, 896 F Supp 816 (ND Ind 1995).  *Williams v Shenango, Inc.,* 986 F Supp 309 (W.D. Pa

16

1997).

The defendant also violated the certification requirements of the FMLA, if it claims that Mrs. Hemenway was terminated because she did not provide adequate certifications of her serious health condition. The defendant did not give written notice to Mrs. Hemenway of the requirement for medical certification, contrary to 29 CFR 825.305(a). Furthermore, the defendant terminated Mrs. Hemenway within 15 days of her commencing her leave, which violates 29 CFR 825.305(b), which states in pertinent part as follows:

> When the leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins. When this is not possible, the employer must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calender days after the employer's request), unless it is not practical under the particular circumstances to do so despite the employee's diligent, good faith efforts.

Even if for the sake of argument the aforementioned notice requirements are ignored, the defendant would not be able to argue that the medical note that Mrs. Hemenway submitted was not sufficient because the note did not inform it that Mrs. Hemenway has a serious medical condition under the FMLA entitling her to a leave under it. If a defendant employer believes that a medical note is incomplete or insufficient, it is duty bound to give the employee "a reasonable opportunity to cure any such deficiency." Case law provides that, "termination is not an appropriate response to an inadequate certification...the employee must be given an opportunity to cure the deficiency." *Marrero v Camden County Board of Social Services*, 164 F Supp 455, 463 (DNJ 2001); *Sims v Alameda-Contra Transit Dist.*, 2 F Supp 2d 1253, 1266 (ND Cal 1998). See also CFR 825.305 (d). The defendant did not give Mrs. Hemenway an opportunity to cure any deficiency.

The defendant in its Reply, on page 5, states inaccurately as follows:

> ....Plaintiff agreed to obtain the forms herself from the Central Office. When she went to the office, plaintiff never followed up and never

17

> completed the forms. Defendant did not have the opportunity to provide plaintiff with any notice thereafter because plaintiff voluntarily resigned her employment.

The defendant's arguments cite no facts and are groundless. In fact, as noted in the *Statement of Facts*, *supra,* the plaintiff attempted to follow up with Ms. Williams, but this did not get her anywhere. She never completed the forms because the defendant never gave her and in fact refused to give her any forms to complete. Mrs. Hemenway cannot be blamed for not breaking into the defendant's offices and stealing the forms. Defendant also had plenty of opportunity to provide her notice of the certification requirement. Ms. Hemenway delivered the medical note to Mrs. Williams on May 12, 2004. Ms. Netzley acknowledged receiving notice that Mrs. Hemenway requested FMLA forms before she wrote the May 26, 2004 termination letter. Mrs. Hemenway is not responsible for the defendant's internal communication problems (the problems may have existed because the defendant did not have a formal policy for the administrators to follow). And the fourteen days or so between May 12 and May 26, 2004 were ample time under the law for the defendant to request certification from the plaintiff. After all, 29 CFR 825.305( c) provides an employer two days to request certification, as follows:

> In most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforseen leave, within two business days after the leave commences.

Parenthetically, where Congress has not directly addressed an issue, the Secretary of Labor's approach (the regulations) must be sustained so long as it is based on a "permissible construction of the statute." *Auer v Robbins*, 519 US 492, 497; 137 L Ed 2d 29, 112 S Ct 705 (1999). For example a 15 day window for providing medical certification is a permissible construction of the statute. Common sense tells us that it is sometimes difficult to contact a doctor within a few days, much less get service on non life threatening issue within that period of time, so the 15 day window is certainly

permissible. The FMLA also cannot be interpreted to benefit employers by trapping unsuspecting employees who are already under stress for medical reasons because they don't know about and have not been informed of their rights under the Act, so the employer's notice requirements are certainly a permissible construction of the statute. At any rate, it is also clear that a violation of a substantive regulation leading to substantive violation (in this case termination) will itself support a cause of action for interfering with rights, even if the alleged violation is not found in the statute itself. See the cases cited in *Plant v Morton International, Inc.*, 212 F 3d 929 (6th Cir 2000).

The plaintiff also expects that the defendant will argue that, even though it interfered with and denied Mrs. Hemenway her rights under the FMLA, her May 27, 2005 "resignation", which it received on June 1, 2004, limits her claim to nominal damages. This argument is groundless, for numerous reasons.

First, Mrs. Hemenway "resigned" only after she had been terminated. A terminated employee logically cannot, after termination, resign. The resignation is illusory.

Second, Mrs. Hemenway "resigned" in response to the termination that occurred as a result of the defendant's failure to abide by the FMLA in numerous ways. Had the defendant informed Mrs. Hemenway of her rights under the FMLA as it should have, Mrs. Hemenway would have known that it was acting illegally, and she would not have resigned. She only "resigned" because she was shocked, assumed that the employer was acting legally, and, admittedly not knowing anything about the FMLA, wanted desperately to be put in a position wherein her subsequent job search efforts would no be grievously harmed. The defendant cannot put the cat back in the bag after Mrs. Hemenway was already bitten by the cat. And once she found out from attorney Sims that the defendant had violated her rights under the FMLA, she demanded that her "resignation," "under duress," be removed, among other relief. The defendant, through Mr. Ley, ignored her requests and did not do anything.

Finally, 29 CFR 825.220 (d) states that "employees cannot waive, nor may employers induce

employees to waive, their rights under the FMLA." *Bluitt v Evallo of America*, 3 F Supp 2d 761 (SD Tex 1998). By its illegal conduct in numerous ways set forth above, including not informing Mrs. Hemenway of her rights under the FMLA in a handbook, a contract, or in a letter, the defendant induced Mrs. Hemenway to resign. Had the defendant complied with FMLA, Mrs. Hemenway would never have drafted and sent a resignation letter dated May 27, 2004, which the defendant received on June 1, 2004, to the defendant, because her intention was to go on a leave under the FMLA and keep her job, not leave her job. In fact, the defendant should be equitably estopped from asserting the alleged resignation as a defense to Ms. Hemenway's claim, because it did not inform her of her rights and duties under the FMLA, as discussed extensively already above. *Sorrell Rinker Materials Corp.*, 395 F 3d 332 (6th Cir 2005). For all of these reasons, Mrs. Hemenway's resignation is voidable by her.

The defendant, again in its Reply to Plaintiff's Response to Defendant's Motion for Order Compelling Independent Medical Examination, at page 7, argues that estoppel is not applicable to the defendant, because it is a governmental entity, citing several cases. The defendant's argument is groundless. The reason is that the defendant, as the employer, had an affirmative obligation under the law to provide the plaintiff with written notice of her rights and obligations under the Act, as set forth extensively above. See 29 CFR 825.301(a) and (b). The defendant did not do so, which severely prejudiced the plaintiff, who had not intended to resign, but did so after she received the May 26, 2004 termination letter and after she was told by Ms. Netzley that she would not be getting FMLA forms, much less leave under the FMLA **(Hemenway dep., at pp 106-109, 117-118; Exhibit 8)**.

The defendant in its aforementioned Reply made a statement that the plaintiff strongly disagrees with, because the facts do not support it. This statement, which appears on page eight of the defendant's Reply, states as follows:

Had plaintiff not resigned, there is every reason to believe that the

20

school district would have corrected the May 26, 2004 letter of Ms. Netzley, provided plaintiff with FMLA forms and allowed the process to go forward. The process would probably have included a request for specific information from plaintiff's physician regarding her medical condition, but the process stopped due to plaintiff's resignation. Plaintiff stopped the process by resigning her employment. The district has consistently treated plaintiff's separation as a resignation. It would be in unfair for Defendant to be estopped from asserting the resignation and/or arguing that plaintiff did not have a serious health condition.

The defendant's gross speculation above is not based on fact. In reality, there is no reason based on fact to believe that the defendant would have done what it says it would have done. Ms. Netzley clearly knew of Mrs. Hemenway's request for FMLA forms before she drafted the May 26, 2004 letter, a fact important enough that the defendant, in its Reply, as set forth earlier on pages 3-5 of this brief, chose deliberately to mischaracterize. Yet Ms. Netzley went ahead and drafted the May 26, 2004 letter anyway, ignoring the FMLA and its requirements. And on May 27, 2004, after Mrs. Hemenway received the termination letter, she telephoned Ms. Netzley and spoke to her. Regarding this conversation, Mrs. Hemenway testified that Ms. Netzley told her that she had received her request for FMLA papers but that she was not going to provide them to her because the FMLA was only for "very important illnesses or big illnesses." **(Hemenway dep., at pp 107-109, 117-118)**.

Furthermore, in August 2004, Mrs. Hemenway, in writing, explained in detail the circumstances leading to her separation from the district and asked that she be allowed to return to work, essentially asking that the district rescind or void the resignation because she was under duress because of her lack of knowledge of the FMLA. The defendant, through its agent Mr. Ley and its attorney Mr. Gierek, ignored Mrs. Hemenway's requests and did nothing. They did not even investigate. They tenaciously stuck to the resignation, even though the resignation would never have occurred had the defendant properly acted in accordance with the law and informed Mrs. Hemenway of her rights and obligations under the FMLA, among other violations it committed. The bottom line is that the defendant had no interest, despite being presented with an opportunity on two separate

occasions, in providing Mrs. Hemenway with FMLA forms and letting the process under the FMLA go forward for her.

In fact, because Mrs. Hemenway's resignation was fraudulently induced and null and void, the defendant's refusal to take Mrs. Hemenway back as an employee in August 2004 constitutes a new interference or continuing interference with her rights under the FMLA. The three week medical leave she had requested, had it been allowed, would have taken her through the end of the school year. The FMLA requires restoration of the employee to her original position after the conclusion of the leave. 29 USC § 2604 (a). Because Ms. Hemenway voided her improperly induced resignation, she should have been restored to her position in late August 2004. By refusing to do so, the defendant continued interfering with Mrs. Hemenway's rights under the FMLA, or interfered with her rights, or both.

## IV.    RELIEF REQUESTED

For all of the reasons set forth in this brief this Court should grant the plaintiff summary judgment with respect to her claim that the defendant interfered with her rights under the FMLA. This order should apply to the defendant's termination of the plaintiff as well as its refusal in late August 2004 and thereafter to restore her to her position.

Date:  December 20, 2005                      Piper, Willoughby & Wise, PLC

                                             By: /s/ William F. Piper
                                             William F. Piper (P38636)
                                             2700 Old Centre, Portage, MI 49024