UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN HEMENWAY,

    Plaintiff,

v.

ALBION PUBLIC SCHOOLS,

    Defendant.

_____/

Case No. 4:05-CV-7

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff Kathryn Hemenway's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Motion has been fully briefed and the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

I.    **BACKGROUND**

Plaintiff brought this action under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54, alleging that Defendant interfered with her attempts to take FMLA leave. In 1999, Plaintiff began work in the Albion Public School District as a substitute teacher. In 2002, Plaintiff changed positions and became a classroom aide for emotionally impaired students at Washington Gardner Elementary School. Sometime thereafter, Plaintiff experienced interpersonal conflicts with another classroom aide at Washington Gardner. Plaintiff claims these conflicts caused her to develop depression, situational anxiety, and aggravated her existing colitis.

On May 12, 2004, Plaintiff's condition worsened and she ultimately left Washington Gardner in tears. That same day, Plaintiff consulted her family physician Dr. Ami Shah, M.D. Dr. Shah's treatment notes reflect that Plaintiff reported experiencing so much stress at work (and within her family life) that she believed she was unable to return to Washington Gardner for the remaining three

weeks of the school year. Plaintiff also complained of blood in her bowel movements. Dr. Shah issued Plaintiff a note excusing her from work for three weeks.

Still on May 12, 2004, Plaintiff returned to Washington Gardner and presented Dr. Shah's note to secretary Jan Hrab. The note was copied and returned to Plaintiff. Plaintiff next spoke with Washington Gardner principal Eddie Williams. Plaintiff requested FMLA leave forms and Williams told her those forms were available at the Albion Public School's central administration office. Williams offered to have the FMLA forms mailed to Plaintiff, but instead Plaintiff agreed she would pick them up herself.

The next day Plaintiff arrived at the central administration office. Plaintiff requested FMLA forms but was told by receptionist Judy Patton that the FMLA administrators (superintendent Corey Netzley and her secretary Sue Armistead) had left for the day. Patton advised Plaintiff she would leave a note for Armistead and indicate Plaintiff had requested FMLA forms. Temporally, here is where the parties' versions of the record diverge significantly.

> **A.    Plaintiff's Version of the Facts:** *Defendant Fired Plaintiff Even Though it Knew Plaintiff Requested FMLA Leave*

According to Plaintiff, a couple of days after she took leave, principal Williams spoke with superintendent Netzley about the circumstances surrounding Plaintiff's leave. Principal Williams may have mentioned Plaintiff's doctor's excuse note then. Sometime before May 26, 2004, secretary Armistead passed along Plaintiff's FMLA request (second-hand from Patton's note) to superintendent Netzley. On May 26, 2004, Netzley drafted a letter to Plaintiff stating, "[a]s a result of your no show for three consecutive days, you are considered to have resigned without notice and are not eligible for rehire." (Def.'s Resp., Ex. 1). On May 27, 2004, Plaintiff telephoned superintendent Netzley on receipt of Netzley's termination letter and asked if Netzley had received

her doctor's excuse note. Netzley informed Plaintiff she had not, but had learned of her FMLA request. Netzley advised Plaintiff she would not give her FMLA forms because she considered Plaintiff to have resigned.

That same day, Plaintiff responded to Netzley's termination letter in writing and informed superintendent Netzley that she did not resign her employment on May 12, 2004, and had requested FMLA leave. Plaintiff also e-mailed principal Williams and asked her to help Plaintiff correct Netzley's termination letter to reflect that she submitted a doctor's excuse note and did not simply stop showing up for work.

### B. Defendants' Version of the Facts: *Plaintiff Resigned Before Requesting FMLA Leave*

According to Defendant, superintendent Netzley did speak with principal Williams, but Williams never mentioned Plaintiff's FMLA request. Principal Williams indicated her belief to superintendent Netzley that Plaintiff had resigned.[1] Acting on her belief that Plaintiff had willingly left her post, superintendent Netzley drafted the May 26, 2004 termination letter. After receiving Netzley's termination letter, Plaintiff e-mailed principal Williams and tried to reconcile her termination, stating, "[w]hile I am resigning, I would like Ms. Netzley's letter to reflect that I did submit a doctor's slip, [and] did not just stop showing up for work, as it attests."[2] (Def.'s Resp., Ex.

---

[1] Whether secretary Armistead informed superintendent Netzley about Plaintiff's doctor's excuse note before Netzley authored the May 26, 2004 termination letter is unclear. At her deposition, Netzley first testified that she did not know Plaintiff had requested FMLA leave before drafting the May 26, 2004 termination letter. Later in her Deposition, Netzley indicated that before she wrote the termination letter, Armistead had informed her of Plaintiff's request for FMLA forms.

[2] Plaintiff's e-mail bears an electronically generated date of May 28, 2004—which would be after she responded in writing to superintendent Netzley's termination letter (May 27, 2004). However, Plaintiff's deposition testimony reflects that she sent the e-mail to principal Williams prior to writing her response letter to superintendent Netzley. As such, the Court is uncertain when Plaintiff responded to Netzley's termination letter even though the letter purports to be drafted on

K). Plaintiff requested clarification to avoid the possibility of potential future employers drawing any negative inferences from her employment record with Defendant. Plaintiff, in a responsive e-mail to Williams, affirmed her desire to resign. Plaintiff also responded to Netzley's termination letter and lamented that she "did not resign on May 12, but at this time I choose to do so." (Def.'s Resp., Ex. L). Finally, Plaintiff's deposition testimony indicates that she had "resigned with the hope of working it out with the next superintendent." (Pl.'s Dep. at 119).

## II.   THE SUMMARY JUDGMENT STANDARD

Under the language of Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209

---

May 27, 2004.

F.3d 552 (6th Cir. 2000); *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004); *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); however, Rule 56 limits the materials the Court may consider in deciding a motion under the rule to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting FED. R. CIV. P. 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

FED. R. CIV. P. 56(e). The Sixth Circuit Court of Appeals has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993); *Logan v. Denny's, Inc.*, 259 F.3d 558, 570 (6th Cir. 2001). Thus, in resolving a Rule 56 motion, the Court will not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991), inadmissible expert testimony, *North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994).

**III.   DISCUSSION**

FMLA entitles eligible employees to take up to 12 weeks of unpaid leave for a qualifying medical or family event, 29 U.S.C. § 2612(a)(1), and guarantees that their position, or its equivalent, will be available upon their return to work. *Id.* § 2614(a)(1). However, an employee must remain employed before requesting FMLA leave; otherwise he is not entitled to the protections of the Act. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999); *Brohm v. JH Props. Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). As is obvious from the Court's recapitulation of the factual background above, it is unclear whether Plaintiff resigned her position before requesting FMLA leave. Consequently, Plaintiff is not entitled to summary judgment.

Furthermore, even if it were clear that Plaintiff had not resigned her position, it is uncertain whether she reasonably apprised Defendant of her request to take time for a serious health condition. *Id.* While she "need not expressly assert rights under the FMLA or even mention the FMLA," 29 C.F.R. § 825.303(b), Plaintiff must give Defendant enough information to reasonably conclude that an event described in FMLA § 2612(a)(1)(D) has occurred. *Hammon*, 165 F.3d at 451. "[W]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 724 (6th Cir. 2003) (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

Plaintiff's excuse note from Dr. Shah is a 3.5 x 5 index card style document which lists the date (May 12, 2004), Plaintiff's name, and Dr. Shah's remarks and limitations as "[p]lease excuse patient from work for 3 weeks." (Pl.'s Mot., Ex. 5). Is this enough information for Defendant to determine that Plaintiff will not be able to perform the functions of her job because of a serious health condition? *Cf. Perry v. Jaguar of Troy*, 353 F.3d 510 (6th Cir. 2003) (indicating time off

request for "child care" is sufficient notice) with *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 429 (6th Cir. 2004) (insufficient notice when requesting time off without specifying nature of illness or injury); *see also Beaver v. RGIS Inventory Specialists Inc.*, 144 Fed. Appx. 452 (6th Cir. 2005) (note indicating employee would need to put off returning to work for a few days was too general and insufficient notice). Given that Defendant is the non-movant and Plaintiff's excuse note is particularly nondescript, the Court finds at the very least a genuine material issue of fact exist as to the propriety of Plaintiff's FMLA notice.

**IV. CONCLUSION**

Therefore, the Court will deny Plaintiff Kathryn Hemenway's Motion for Summary Judgment. An Order consistent with this Opinion shall enter.

DATED in Kalamazoo, MI:
April 10, 2006

    /s/ Richard Alan Enslen
RICHARD ALAN ENSLEN
SENIOR UNITED STATES DISTRICT JUDGE