UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN HEMENWAY,

      Plaintiff,

v.

ALBION PUBLIC SCHOOLS,

      Defendant.      /

Case No. 4:05-CV-7

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Albion Public Schools' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b). Also before the Court is Defendant's Motion *in Limine*. The Motions have been fully briefed and the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.   BACKGROUND**

Plaintiff brought this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54. Plaintiff alleges Defendant interfered with her attempts to takes FMLA leave. In 1999, Plaintiff began working for Albion Public School District as a substitute teacher. Plaintiff became a classroom aide for emotionally impaired students at Washington Gardner Elementary School in 2002. While a classroom aide, Plaintiff had personal conflicts with another classroom aide. Plaintiff alleges that these conflicts resulted in her developing depression, situational anxiety, and also aggravated her existing colitis.

On May 12, 2004, these conditions allegedly worsened and Plaintiff left Washington Gardner in tears seeking medical attention. Plaintiff visited her primary care physician, Dr. Ami Shah, M.D. In her treatment notes, Dr. Shah notes that Plaintiff was experiencing so much stress at work and in her family life that she did not believe she would be able to continue to work for the three weeks

remaining in the school year. Plaintiff also complained of blood in her bowel movements. Dr. Shah wrote Plaintiff a note which excused her from work for three weeks.

Plaintiff returned to Washington Gardner later on May 12, 2004, and presented the doctor's note to the secretary who copied the note and returned the original to Plaintiff. Plaintiff also spoke with principal Eddie Williams ("Williams"). Plaintiff requested FMLA forms and was instructed by Williams that the forms were available in the central administration office and Williams could have them mailed to her. Plaintiff declined the offer and agreed to pick them up herself.

On May 13, 2004, Plaintiff traveled to the central administration office to retrieve the FMLA forms but was told by a receptionist, Judy Patton, that the FMLA administrators, superintendent Corey Netzley ("Netzley") and her secretary Sue Armistead ("Armistead"), had left for the day. Plaintiff was also told by Patton that a note would be left for Armistead which would indicate Plaintiff's request for the FMLA forms. At this point, Plaintiff's version of the facts and Defendant's version of the facts diverge significantly. For that reason, each version is separately recounted.

A. **Plaintiff's Version of the Facts**

Plaintiff alleges that a few days after she took leave from Washington Gardner, Williams spoke with Netzley about Plaintiff's leave. In her deposition, Williams indicated that she may have mentioned Plaintiff's doctor's note at that time. (Williams Dep. 45-47.) At some point before May 26, 2004, Armistead passed Plaintiff's FMLA request to Netzley. On May 26, 2004, despite this knowledge, Netzley prepared a letter to Plaintiff which stated that as a result of her "no show for three consecutive days," Plaintiff was considered to have resigned without notice and would not be eligible for rehire. The next day, upon receipt of the letter, Plaintiff sought to correct the mistake and telephoned Netzley. Plaintiff asked Netzley if she had received her doctor's note. Netzley advised

Plaintiff that she had only learned of her FMLA request and had not received the doctor's note. Plaintiff alleges that Netzley told her that she would not be given the FMLA forms because she had resigned from her employment.

Plaintiff also responded to the termination letter in writing and clarified that she had not resigned her employment on May 12, 2004, rather she had merely requested FMLA leave. At this time, Plaintiff also emailed Williams to implore her help in correcting the information in the termination letter to reflect that Plaintiff had a doctor's note and was not a 'no show'.

B. **Defendant's Version of the Facts**

Defendant maintains that Netzley and Williams spoke about Plaintiff's employment status but principal Williams never advised Netzley that Plaintiff had requested FMLA documents; rather, Williams advised Netzley that it was her belief that Plaintiff had resigned.[1] Netzley did not see the doctor's note before writing the termination letter on May 26, 2004. During the telephone conversation with Plaintiff, Netzley told her that she would look in to the situation and consider changing any inaccuracies that existed in the termination letter. Plaintiff's e-mail to Williams, while indicating her wish for the termination letter's factual inaccuracies to be changed, also stated that Plaintiff was resigning.[2] Plaintiff also stated in a responsive e-mail to Williams on that same day that

---

[1] The Court notes Netzley stated in her deposition that she was unaware of Plaintiff's FMLA request when she drafted the termination letter; however, later in the deposition, she states that before authoring the termination letter, Armistead informed her of Plaintiff's FMLA request.

[2] It is unclear when the e-mail from Plaintiff was sent to Williams. Although the e-mail bears the date May 28, 2004 (the date after Plaintiff responded in writing to Netzley regarding the termination letter), Plaintiff testified in her deposition she was certain she sent the e-mail prior to writing her response letter to Netzley. Therefore, it is not clear when Plaintiff responded to the termination letter.

"In [her] response [she] went ahead and resigned." (Def.'s Ex. L.)  Plaintiff's letter to Netzley also stated that "I did not resign on May 12, but at this time I choose to do so." (Def.'s Ex. M.)  Plaintiff also claims in her diary and in her deposition testimony to have resigned. (Def.'s Ex. N & Hemenway Dep. at 119.)

## II. LEGAL STANDARDS

### A. *Summary Judgment*

Under the language of Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004); *Graham-Humphreys v. Memphis Brooks Museum of Art Inc.*, 209 F.3d 552, 557 n.7 (6th Cir. 2000); *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477

U.S. at 323 (*quoting Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); however, Rule 56 limits the materials the Court may consider in deciding a motion under the rule to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (*quoting* Fed. R. Civ. P. 56(c)).

      B.    *Motion in Limine*

Although the Federal Rules of Evidence do not specifically contemplate use of motions *in limine*, this practice has evolved as part of the federal courts' inherent authority to manage trials. *See United States v. Luce*, 469 U.S. 38, 41 n.4 (1984). The practice is a useful tool in order to try cases more efficiently as well as to prevent jury prejudice by excluding evidence which is clearly irrelevant or unfairly prejudicial. *See Jonasson v. Lutheran Child & Family Serv.*, 115 F.3d 436, 440 (7th Cir. 1997).

Under the Federal Rules of Evidence, evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Evidence is inadmissible due to prejudice if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

**III.    DISCUSSION**

    A.    **Summary Judgment**

To be successful on an interference claim under FMLA, 29 U.S.C. § 2601 *et seq*., a plaintiff must show: (1) she is an "eligible employee" under 29 U.S.C. § 2611(2); (2) the defendant is an "employer" under 29 U.S.C. § 2611(4); (3) the employee was entitled to the leave under 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of her intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which she was entitled. *Calvin v. Honda of Am. Mfg. Inc*., 346 F.3d 713 (6th Cir. 2003). Defendant contends there is no genuine issue of material fact regarding whether Plaintiff was entitled to leave under FMLA and whether Plaintiff gave sufficient notice of her intention to take leave. Defendant argues that Plaintiff voluntarily resigned and, therefore, waived her rights under the FMLA and that Plaintiff is not entitled to back pay.

    1.    *Resignation and Waiver under the Family Medical Leave Act*

An employee must remain employed before requesting FMLA leave, or she is not entitled to the protections of the Act. *Hammon v. DHL Airways, Inc*., 165 F.3d 441, 447 (6th Cir. 1999); *Brohm v. JH Props. Inc*., 149 F.3d 517, 523 (6th Cir. 1998). Defendant's first argument in this Motion is that Plaintiff voluntarily resigned her position and as a result is barred from claiming protection under FMLA. Plaintiff, in response, argues her resignation was ineffective because she had already been terminated by Defendant. As is evidenced by the Court's recitation of the factual background, there remains genuine issues of material fact as to whether Plaintiff effectively resigned from Albion Public Schools before she requested leave under FMLA. Therefore, summary judgment on this issue is not proper.

2. *Sufficiency of Information that Plaintiff Provided*

The Act is silent in regards to the type of notice that an employee must give to her employer when the need for the leave is unforeseeable. However, under the Regulations,

> (a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible...
> (b) The employee should provide notice to the employer either in person or by telephone, telegraph...The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means...

29 C.F.R. § 825.303(a),(b). "Thus, at a minimum an employee must inform her employer of her condition with sufficient detail to make it evident that the requested leave is protected as FMLA-qualifying leave." *Reich v. Midwest Plastic Eng'g, Inc.*, 1995 WL 514851 *3 (W.D. Mich. July 26, 1995). "[W]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Cavin*, 346 F.3d at 724 (quoting *Manuel v. Westlack Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

Plaintiff supplied Defendant with an excuse note from Dr. Shah. The note was a 3.5 x 5 note card document that set forth Plaintiff's name, the date, and the plain statement "[p]lease excuse patient from work for 3 weeks." (Def.'s Ex. I.) Defendant argues that this note was insufficient to put it on notice that Plaintiff would not be able to perform the functions of her job because of a serious health condition. However, Plaintiff responds that by notifying Williams she did not feel well, notifying the school's office of her need to see her doctor, turning in the doctor's note and requesting FMLA papers, she adequately notified Defendant of her FMLA-qualifying condition. (Hemenway Dep. 88-100.) It is unclear if these facts give rise to sufficient notice under the Regulations. *Cf. Brenneman v.*

7

*MedCentral Health Sys.*, 366 F.3d 412, 429 (6th Cir. 2004) (insufficient notice where employee requested time off without specifying the nature of the illness or injury) with *Perry v. Jaguar of Troy*, 353 F.3d 510 (6th Cir. 2003) (indicating time off request for "child care" is sufficient notice); *see also Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005) (insufficient notice where employee did not indicate he would need time off, did not request FMLA certification forms, and returned to work after his first doctor's appointment). Given that the Plaintiff is the non-movant and she requested FMLA forms and also indicated she needed time off for medical reasons, the Court finds that there exist genuine issues of material fact as to the sufficiency of notice under FMLA.[3]

      3.     *Existence of a Serious Medical Condition*

Defendant's next argument is that Plaintiff was not suffering from a "serious health condition" as required for protection by the FMLA. The term "serious health condition" is defined in the statute as an "illness, injury, impairment, or physical or mental condition that involves..." hospitalization, other inpatient care, or "continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11)(A), (B). It is undisputed that Plaintiff did not receive inpatient care, or that she was pregnant or was suffering from a chronic serious health condition. 29 C.F.R. § 825.114(a)(2)(B)(ii). Therefore, the pertinent inquiry is whether Plaintiff was under continuing treatment pursuant to 29 C.F.R. § 825.114(a)(2)(i)(A) or (B). Under these Regulations, Plaintiff must have had a period of incapacity of three days and the health condition must have involved treatment two or more times by a health care

---

[3]Defendant also argues that its obligation to investigate further was severed by Plaintiff's resignation. As discussed above, issues of fact exist as to whether Plaintiff resigned or was terminated prior to her resignation and, therefore, summary judgment as to this issue is also inappropriate.

provider, or treatment by a health care provider which resulted in a regimen of continuing treatment under the supervision of the health care provider. 29 C.F.R. § 825.114(a)(2)(i)(A),(B).

Defendant relies extensively on the deposition of psychologist R. Scott Stehnouwer, Ph.D., who conducted an independent mental examination of Plaintiff. Defendant points to his findings to support its contention that Plaintiff's primary physician's diagnosis was inaccurate or overstated. However, Plaintiff visited Dr. Shah on May 12, 2004, where she diagnosed Plaintiff with depression and situational anxiety. Dr. Shah prescribed a regimen of Paxil as a result of that visit and scheduled a follow-up appointment with Plaintiff. (Shah Dep. 12-29, 41-48.) Plaintiff was also referred to a psychologist and a gastroenterologist.[4] (*Id.*) Further, Plaintiff maintains that she was incapacitated for at least three days due to her depression and situational anxiety.

Given that Plaintiff is the non-movant and that she claims to have been incapacitated for three days, in addition to attending more than one doctor's appointment concerning the same condition and was prescribed a drug regimen, the Court finds genuine issues of material fact exist as to whether Plaintiff had a qualifying "serious health condition."

    4. *Reasonable Diligence in Looking for Alternative Employment*

Defendant argues that Plaintiff is not entitled to back pay because she was discharged from interim employment and did not reasonably seek other employment. *See* 29 U.S.C. § 2617 (an employee may be entitled to lost wages, salary, employment benefits, interest, liquidated damages and a reasonable attorney fee, in addition to any judgment).

---

[4] Defendant contends that Plaintiff's subsequent treatment after her May 28, 2004 resignation does not qualify under FMLA because she was no longer an employee. Again, as there is a genuine issue of material fact as to whether Plaintiff's resignation was valid, this argument does not support summary judgment.

Besides seeking to reinstate her employment with Defendant, Plaintiff worked as a freelance writer for the Jackson Citizen Patriot from May 2003 to May 2004. (Hemenway Dep. 21.) Since July 2004, Plaintiff has worked as a freelance writer for the Battle Creek Enquirer. (*Id*. at 22.) Plaintiff also was employed by Concord Community Schools, although after her probation period her contract was not renewed. Defendant claims that Plaintiff was dismissed due to wilful misconduct including that she did not come to work as scheduled and did not follow the rules. Plaintiff, by affidavit, maintains that she put forth her best efforts to do a good job in Concord Community Schools and recites other jobs in the education field that she has sought since her employment with Albion Public Schools ended. Construed in the light most favorable to the non-movant, the Court finds that there are genuine issues of material fact regarding whether Plaintiff made reasonable efforts to seek and maintain other employment; as such, summary judgment is inappropriate.

      B.     **Motion *in Limine***

Finally, the Court addresses Defendant's Motion *in Limine*. Defendant argues that Dr. Shah should not be allowed to testify regarding the diagnosis of "acute depression and situational anxiety" because Dr. Shah is not qualified as an expert in this area. Defendant bases its argument upon the holding in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and the District Court's gatekeeping role under Federal Rule of Evidence 702. Pursuant to Federal Rule of Evidence 702:

> If a scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. "[W]hen faced with a proffer of expert scientific testimony, Rule 702 requires a district court to determine whether the evidence both rests on a reliable foundation and is relevant to the task at hand." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255 (6th Cir. 2001) (quoting *Daubert*, 509 U.S. at 597).

Defendant claims Dr. Shah's limited experience as a doctor, lack of significant specialized training regarding mental health issues, lack of a differential diagnosis, and her use of terminology (which the independent psychologist dubbed as antiquated) result in her diagnosis being unreliable. However, the Court agrees with Plaintiff that these issues go toward the weight of the evidence, rather than its admissibility. The Court notes, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 597. Defendant will certainly have its chance to attack Dr. Shah's testimony and diagnosis at trial. The testimony of Dr. Shah should be admitted as it is relevant and material. Therefore, Defendant's Motion *in Limine* is denied.

## IV. CONCLUSION

Therefore, the Court will deny Defendant Albion Public Schools' Motion for Summary Judgment. The Court also will deny Defendant's Motion *in Limine*. An Order consistent with this Opinion shall enter.

DATED in Kalamazoo, MI:  /s/ Richard Alan Enslen
November 15, 2006  RICHARD ALAN ENSLEN
  SENIOR UNITED STATES DISTRICT JUDGE